# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINIC ROSS, FRANTZ CALIXTE, and JACQUELINE RODRIGUEZ, | : : : |
| Plaintiffs, | : CIVIL ACTION : : |
| v. | : : NO. 12-5050 |
| INFINITY INSURANCE COMPANY d/b/a INFINITY INDEMNITY INSURANCE COMPANY, | : : : : |
| Defendant. | : |

## MEMORANDUM

RONALD L. BUCKWALTER, S.J.                                                                                                  June 10, 2013

Currently pending before the Court is the Motion by Defendant Infinity Indemnity Insurance Company ("Infinity") to Assess Costs Pursuant to Federal Rule of Civil Procedure 41(d). For the following reasons, the Motion is granted and costs are assessed in favor Defendant and against Plaintiffs Dominic Ross and Frantz Calixte[1] ("Plaintiffs") and their counsel Gary Stewart Seflin, Esquire in the amount of $10,847.98.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 3, 2012, Plaintiffs Ross, Calixte, and one Jacqueline Rodriguez filed a civil action in state court in connection with injuries they allegedly sustained while passengers in a car insured by Defendant Infinity. As a result of Infinity's refusal to pay underinsured motorist ("UIM") benefits or first party medical benefits, they filed a complaint alleging breach of

---

[1] Defendant has not included Plaintiff Jacqueline Rodriguez in its request for costs.

fiduciary duty to pay medical costs (Count I), breach of contract/breach of good faith and fair dealing (Count II), bad faith insurance practices (Count III), breach of statutory and contractual duty to supply first party benefits (Count IV), breach of statutory and fiduciary duty to pay underinsured motorists benefits (Count V), and breach of contract (Count VI). Defendant successfully removed the case to federal court on September 4, 2012 and, immediately thereafter, filed a Motion to Dismiss for Failure to State a Claim. Plaintiffs did not respond to that Motion, but filed a Motion to Remand the case back to state court. Via orders issued on October 3, 2012, the Court granted the Motion to Dismiss as to Counts I, II, and V and denied Plaintiffs' Motion to Remand. Plaintiffs later moved for reconsideration of the denial of remand, to no avail.

Subsequently, the parties began discovery. Given Plaintiffs' repeated failures to respond to discovery requests from Defendant, the Court granted Defendant's Motion to Compel Interrogatories and Requests for Production on January 29, 2013, and Defendant's Motion to Compel Plaintiffs' Depositions on February 13, 2013. One week later, however, upon signed stipulation by both parties, Plaintiffs moved for voluntary dismissal of the case without prejudice. The Court granted the dismissal on February 25, 2013.

Less than four weeks later, on March 22, 2013, Plaintiffs Dominic Ross and Frantz Calixte—but not Jacqueline Rodriguez—filed a new suit in the Court of Common Pleas of Philadelphia County. This second lawsuit was filed by the same attorney representing Plaintiffs in the first action and involved the same denial of first party medical benefits by Infinity in connection with the same March 24, 2011 car accident. Plaintiffs sued, for the first time, the two other drivers involved in the accident, thereby defeating diversity. This second complaint alleged several counts against Defendant Infinity: (1) breach of fiduciary duty regarding their first party

medical benefits claim; (2) breach of the covenant of good faith and fair dealing and breach of contract; and (3) violations of 74 Pa.C.S. §§ 1713, 1716. Although there are no statutory bad faith or UIM claims, two of the aforementioned claims mirror two of the claims dismissed by the Court in the original lawsuit.

Subsequently, on March 8, 2013, Defendant Infinity filed a Motion for Assessment of Costs pursuant to Federal Rule of Civil Procedure 41(d) against Plaintiffs Ross and Calixte and their attorney, Gary Stewart Seflin. Plaintiffs responded on April 29, 2013, Defendant filed a Reply Brief on May 3, 2013, Plaintiffs filed a Sur-reply Brief on May 13, 2013, and Defendant submitted a Supplemental Sur-reply Brief on May 15, 2013. The Motion is now ripe for judicial consideration.

## II. DISCUSSION

### A. **Whether Defendant is Entitled to an Award under Rule 41(d)**

Federal Rule of Civil Procedure 41(d) provides as follows:

**(d) Costs of Previously Dismissed Action.** If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
**(1)** may order the plaintiff to pay all or part of the costs of that previous action; and
**(2)** may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d). "This rule permits a court to award costs to a party required to twice defend the same action where the facts of a case warrant such an award." Huntley, L.L.C. v. Monterey Mushrooms, Inc., No. Civ.A.08-377, 2009 WL 2992553, at *3 (D. Del. Sept. 18, 2009) (citing Meredith v. Stovall, 216 F.3d 1087 (10th Cir. 2000)). Stated differently, "[u]nder 41(d), if a plaintiff has previously dismissed the same claim against the same defendant in any court, state or federal, the federal court may require the plaintiff to pay some or all of the costs of the

3

previous action." 10 James Wm. Moore et al., Moore's Federal Practice § 54.102(2)(e) (3d ed. 2009). Federal Rule of Civil Procedure 41(d) is intended to prevent vexatious litigation, forum shopping, and attempts to gain tactical advantage by dismissing and refiling the suit. Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 874 (6th Cir. 2000). Thus, costs may be imposed when the subsequent claim and relief is "identical, or nearly identical" and "the circumstances of the case warrant an award of costs to prevent prejudice to the defendant." Esquivel v. Arau, 913 F. Supp. 1382, 1387–88 (C.D. Cal 1996).[2]

The present matter is precisely the type of case for which Rule 41(d) was designed. The second action currently pending in state court involves the same claims against the same defendant and seeks nearly identical relief. By voluntarily dismissing the federal action and then re-filing, however, Plaintiffs obtained multiple and substantial tactical advantages. First, despite their two unsuccessful efforts in federal court to have the case remanded, Plaintiffs managed to dismiss the federal court action and then forum-shop to file their new case in state court, with the addition of two defendants that now defeat diversity jurisdiction. Second, notwithstanding their failure to defend against Infinity's motion to dismiss and despite the Court's order dismissing three of their claims, Plaintiffs re-filed these identical claims in state court, thereby circumventing the prior Order. When faced with Defendant's preliminary objections to these re-filed claims, Plaintiffs argued that because the prior case was without prejudice, the prior dismissal Order had no preclusive effect. Third, although Plaintiffs were subject to two

---

[2] It is well-established in the Third Circuit that a "district court retains jurisdiction to decide 'collateral' issues—such as sanctions, costs, and attorneys' fees—after a plaintiff dismisses an action by notice." In re Bath & Kitchen Fixtures Antitrust Litig., 535 F.3d 161, 166 n.8 (3d Cir. 2008); Zacharkiw v. Prudential Ins. Co. of Am., No. Civ.A.10-639, 2012 WL 39870, at *5 (E.D. Pa. Jan. 6, 2012).

4

discovery orders requiring them to provide full and complete responses to interrogatories by February 5, 2013 and to sit for depositions by February 20, 2013, Plaintiffs managed to evade deadlines and dodge compliance with these Orders without sanction by simply dismissing the case and then refiling in state court. Ultimately, Plaintiffs' tactics came at a price to Defendant. Although there were no discovery, depositions, or hearings, such inactivity did not result from lack of effort on Defendant's part. Rather, Defendant expended money to file a motion to dismiss, defend a motion for remand, defend a motion for reconsideration, answer the Complaint, serve discovery requests, and file two separate motions to compel—all for naught. At this juncture, the only recompense for Defendant to ensure that it does not suffer further prejudice is an award of its costs incurred during litigation of the federal action.

In an effort to sidestep Rule 41(d) and its ramifications, Plaintiffs offer several arguments, none of which this Court finds convincing. First, Plaintiffs contend that "fees and costs are not generally awarded when an action is dismissed without prejudice because '[t]he purpose of the awards in such cases is to compensate the defendant for having incurred the expense of trial preparation without the benefit of a final determination of the controversy.'" (Pls.' Resp. Opp'n Mot. for Costs 12 (quoting Connor v. Corporate Life Consultants, et al., No. Civ.A.06-2831, 2006 WL 2828864 (E.D. Pa. Sept. 29, 2006).) Basic logic, however, reveals the fallacy of Plaintiffs' argument. Pursuant to its plain language, Rule 41(d) only operates where a plaintiff who previously dismissed an action files an action based on or including the same claim against the same defendant. A matter dismissed with prejudice could not, under res judicata principles, be re-filed in a subsequent proceeding. Under Plaintiffs' reasoning, then, there would be no situation in which Rule 41(d) could ever apply. Rather, quite the opposite rule exists. Generally,

"if the dismissal is with prejudice the court lacks power to require an attorney's fee to be paid, barring exceptional circumstances." John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186, 191 (E.D. Pa. 1982). This is because the defendant has the benefit of a final determination of the controversy without having to incur expenses for trial preparation. Id. On the other hand, "[t]here is no question that Rule 41(a)(2) authorizes a court to award costs and attorneys' fees as a condition of voluntary dismissal and numerous courts have done so where a voluntary dismissal has been granted without prejudice." Id. (citing 9 Charles Alan Wright, et al., Federal Practice & Procedure § 2366 (3d ed.)). In the present case, however, Defendant has incurred the expense of litigation without the benefit of a final determination of the case. Compensation of such expense is the exact purpose behind Rule 41(d).

Second, Plaintiffs argue that Defendant's attorney agreed to the dismissal without prejudice and agreed that once medical records were obtained that suit would need to be filed against both the tortfeasors and Infinity. Accordingly, any efforts to now seek fees are disingenuous. Plaintiffs, however, provide no support—in the form of letters, emails, or affidavits—for this notion of an agreement between counsel for Plaintiffs and counsel for Defendant. The mere fact that defense counsel signed off on a stipulation for dismissal without prejudice does not, standing alone, suggest that Defendant agreed that the case could be re-filed in a new forum with claims that were already dismissed. To the contrary, Defendant's counsel, Chester F. Darlington, Jr., Esq., provides an affidavit indicating only that an assistant from Plaintiffs' counsel's office called to state that her clients were dropping the above-captioned lawsuit, to indicate that Plaintiffs would need to find new counsel, and to request that Defendant sign a stipulation to dismiss the case. (Def.'s Reply Br., Ex. A, Affidavit of Chester Darlington

("Darlington Aff.") ¶ 3.) Upon receipt of the Stipulation and after discussion with his client, Mr. Darlington again spoke with the assistant and indicated that he would sign it. (Id. ¶¶ 4–5.) Mr. Darlington attests to the fact that he never spoke with Plaintiffs' counsel, never made any agreements with Plaintiffs' counsel or his assistant, never discussed the contents of the stipulation with Plaintiffs' counsel or his assistant, and never discussed any second or subsequent lawsuit to be filed. (Id. ¶¶ 12–19.) As aptly noted by Defendant, it is illogical to believe that Defendant's counsel would agree to dismissal of the case with a subsequent re-filing in state court when Defendant had already expended substantial sums defending both Plaintiffs' Motion for Remand and Motion for Reconsideration. Absent contrary proof from Plaintiff, the Court accepts Mr. Darlington's Affidavit as true and rejects this portion of Plaintiffs' argument.

Third, Plaintiffs contend that the stipulation of dismissal was not done with an intent to evade Court orders, but rather because one of Plaintiffs' treating physicians, Gregory A. Nelson, M.D., had not produced records and reports. While the Court acknowledges that Plaintiffs faced some difficulty in acquiring records from Dr. Nelson's office, this difficulty fails to explain their actions in the dismissal and re-filing of the lawsuit. As a primary matter, the Court deems it problematic that Plaintiffs initiated the first action without having the medical records in hand or without having even made a request for such records. More importantly, the Court notes that Plaintiffs never issued a subpoena to Dr. Nelson, requested an extension of time to respond to discovery, or otherwise sought Court assistance in obtaining these records. Having failed to do anything other than write repeated letters to the doctor, Plaintiffs cannot now rely on their lack of receipt of these records to justify dismissal of the entire lawsuit followed by an almost immediate re-filing of the identical lawsuit in state court.

Fourth, Plaintiffs suggest that the dismissal was motivated, in part, by the disappearance of former Plaintiff Jacqueline Rodriguez. Again, however, Plaintiff could have easily just stipulated to her dismissal or otherwise dropped her from the lawsuit.

Fifth, Plaintiffs claim, without any supporting evidence, that the efforts to resolve the third-party claims with the other tortfeasors "which obviously appeared at first to be a foregone conclusion, [had] gone awry because of a dispute between the two tortfeasors plead with incomplete medical records." (Pls.' Resp. Opp'n Mot. for Costs 10–11.) Thus, Plaintiffs assert that they were required to file a new lawsuit to preserve claims against them. This argument is also unconvincing. The fact remains that Plaintiffs knew the identity of these tortfeasors from the outset of the case. More importantly, contrary to their assertions, Plaintiffs knew, prior to the filing of their initial action, that at least one of the tortfeasors would not settle. (See Pls.' Reply Brief, Ex. G. (letter from insurer of defendant Korban dated June 9, 2011).) Plaintiffs could have easily included this individual, and any other alleged tortfeasor, in the original action while engaging in settlement discussions. Alternatively, they could have sought to join these tortfeasors as parties in the already pending federal litigation. Accordingly, such an unsubstantiated argument does not justify the voluntary dismissal.

In a last-ditch effort to avoid Rule 41(d), Plaintiffs contend that they dismissed the first lawsuit because the UIM claims asserted in that suit, but not brought in the second suit, were not ripe. Such logic, however, is nonsensical for multiple reasons. Primarily, if such claims were not ripe, Plaintiffs had no legal basis for bringing them in the first place and then maintaining them for several months. Moreover, assuming Plaintiffs only learned of the ripeness problems during the course of the first litigation, the proper action would have been, again, to seek to

amend the complaint or otherwise voluntarily dismiss these claims in lieu of dismissing the entire action and re-filing again.

In short, the litany of arguments proffered by Plaintiffs in support of their actions strikes the Court as nothing more than grasping at straws in order to avoid the legal impact of Rule 41(d). Based on the core facts, Plaintiffs had no sustainable reason for dismissing their federal action and re-filing almost the identical action in state court other than to obtain a state court forum, have a second bite at the apple with respect to its dismissed claims, and evade this Court's orders requiring the production of documents and the procession of depositions.[3] Even assuming Plaintiffs did not act in bad faith, Rule 41(d) does not require any such showing. See Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 874 (6th Cir. 2000) (declining to require a showing of bad faith before awarding costs and fees under Rule 41(d)); Scott v. Stone, No. Civ.A.09-12129, 2009 WL 2960454, at *1 (E.D. Mich. Sept. 14, 2009) ("A defendant need not show 'bad faith'

---

[3] Plaintiffs' Response relies heavily on the case of Young v. Johnson & Johnson Corp., No. Civ.A.05-2393, 2005 WL 2886218 (E.D. Pa. Nov. 2, 2005) to argue that an award of fees and costs is not appropriate in this case. The Court, however, deems that case substantially distinguishable from the present matter. The court in Young found that the defendants knew about the possibility of dismissal of the federal action for nearly the entire time the case has been in federal Court since the federal and state court actions were filed within weeks of each other. Id. at *7. "On June 10, 2005, plaintiffs filed their Complaint in the Florida litigation, and on August 19, 2005, defendants received notice of plaintiffs' interest in dismissing this case. Thus, within three weeks of removal, defendants had notice of the two cases, and within three months of removal, defendants knew that plaintiffs wanted to dismiss this case." Id. In addition, the court in Young found that "any alleged wasted expenses incurred by defendants will be mitigated, if not entirely eliminated, by the economy of litigating the Intergel cases, including this one, as consolidated cases in the Florida courts." Id.

In this case, however, Plaintiffs litigated only the removed federal action for almost seven months before seeking dismissal and then, without prior notice to Defendant, filed the new state court action. Moreover, Defendants' efforts in dismissing claims, defending against remand, and obtaining discovery orders are entirely lost in the new action, which now moots the effect of all of this Court's prior rulings. Accordingly, the Court deems Young inapposite in the disposition of the present case.

on the part of the plaintiff to obtain relief under Rule 41(d)."); Siepel v. Bank of Am., N.A., 239 F.R.D. 558, 563 (E.D. Mo. 2006) (holding that "[n]o showing of bad faith is required" for an award of fees under Fed. R. Civ. P. 41(d)); Esquivel v. Arau, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996) ("Nothing in the language of Rule 41(d) or the case law suggests that a defendant must show 'bad faith' before a district court can order payment by a plaintiff of costs incurred in a voluntarily-dismissed previous action. Instead, the court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant."). Ultimately, whatever their intent or strategy, Plaintiffs' required Defendants to litigate the original case for seven months prior to dismissing it and then, almost immediately, restarted the case by filing a new action in state court. In such a situation, the Court may properly award relief under this Rule. For the reasons set forth above, we now exercise our discretion to do so and award the Defendant reasonable costs.

**B.    Amount of Award**

Having found that Defendant is entitled to an award under Rule 41(d), the Court must now determine the amount of that award.[4] Courts assess the reasonableness of a claimed fee

---

[4] Although courts differ on the issue of whether attorneys' fees should be included as part of an award of costs under Rule 41(d) and although the Third Circuit has not specifically addressed this issue, the majority of Courts have found that the term "costs" under Rule 41(d) includes both costs and attorneys fees. See, e.g., Huntley, L.L.C. v. Monterey Mushroom, Inc., No. Civ.A.08-377, 2009 WL 2992553, at *4 & n.4 (D. Del. Sept. 18, 2009) (allowing defendants to recover reasonable attorneys' fees and costs under Rule 41(d)); Cadle v. Beury, 242 F.R.D. 695, 697–98 (S.D. Ga. 2007) (same); Aloha Airlines, Inc. v. Mesa Air Grp., No. Civ.A.07-0007, 2007 WL 2320672, at *3 (D. Haw. Au. 10, 2007) (same); Siepel v. Bank of Am., N.A., 239 F.R.D. 558, 563–64 (E.D. Mo. 2006) (same); Esquivel v. Arau, 913 F. Supp. 1382, 1391–92 (C.D. Cal. 1996) (same). As this Court concurs with the majority's reasoning that Rule 41(d) would become a "toothless" deterrent if it did not include attorneys' fees in its assessment, the

using the "lodestar" formula, which entails multiplying the number of hours reasonably expended by the appropriate hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).

Defendant submits detailed billing records for the costs incurred in defending the original action in this case. Plaintiffs do not challenge either the accuracy or the reasonableness of such records. Undertaking an independent review, the Court recognizes that three attorneys worked on this case over the course of seven months. The two partners charged $165 per hour, while the senior associate charged $135 per hour. Such rates are clearly and indisputably reasonable in the Philadelphia market. Moreover, the bills reveal that defense counsel spent a total of 62.1 hours on the case from its inception on August 3, 2012 to its dismissal on February 25, 2013, which breaks down to less than ten hours a month. Ultimately, the total costs and attorneys fees incurred in the prior action amount to $9,767.98—a clearly justifiable amount given counsel's success on the motion to dismiss, the motion to remand, the motion for reconsideration, and the two motions to compel. Finally, the Court notes that little, if any, of this legal work will be of use in the current litigation since much of counsel's time was expended on obtaining orders which no longer have any legal effect. In addition, the Court finds that Defendant is entitled to its costs and fees in preparation of the present Motion in the amount of $1,080. Accordingly, the Court grants Defendant a total award of $10,847l.98.

An appropriate Order follows.

---

Court will follow this line of cases.